Judge Wallace, let us know when you're all set. I'm set. Thank you. Okay. You may proceed when you're ready. Thank you, Judge Owens. Your Honors, and may it please the Court, my name is John Manier, and I'm representing four appellants who are here before this Court today, Dr. Brant Putnam, Dr. Christian DiVirgilio, Dr. Janine Vinch, and Dr. Roger Lewis. And each of the four has somewhat different facts than the other. Dr. Putnam is the only one who was present at all of the relevant meetings. He was the president of the PSA and the chair of the Medical Executive Committee. So he presided over the meetings. He didn't supervise them, but he presided over them. Counsel, and I don't want to deter you too much in your presentation, but I just want to ask, we had this case in 2019 on a motion to dismiss. Yes. And we held that no qualified immunity at that time. Correct. At that time. So can you tell us what has changed since then? Because as I understand it, we now have motions for summary judgment. Right. And the district court denied those motions. Right. So we have to effectively, for you to prevail here today, we have to take their side of the facts and then say if we take their side of the facts, it would qualify immunity apply. Right? Correct. So what has changed between a motion to dismiss and a summary judgment motion? That, unfortunately for you, you didn't win. So, Your Honor, the motion to dismiss was based solely on the allegations and the pleadings. Sure. And nothing outside of them. And we have nine volumes of excerpts of record here, and so there's a lot outside of the pleadings, including the details of all the meetings and who was there and who was not. And importantly, what was before these four doctors and executive committee members. And in particular, you have the professional staff association bylaws, which were not in the record before, which authorized the investigation. They say that it's not an investigation, but it's certainly a fact finding. For the FPPE, the focused professional, I'm going to get the initials wrong. It's FPPE. We have it in the record. It's basically that is another committee. Because Dr. DiVirgilio is the chair of the surgery department, so you have the surgery department, and then you have the subdivision vascular surgery where Dr. Ryan practiced. And Dr. DiVirgilio is not in vascular, but he's head of the department. So by the bylaws, he selects the FPPE committee, what we call the ad hoc committee. So there are five physicians there. None of them are parties to the case. So what happens? So the first important, I guess, gateway to this case is that you have the decision to actually convene the FPPE, and you have justifications for that. And by the way, all along here, we are assuming we're not challenging, because this court has no jurisdiction over our real life challenge, to the fighting of the factual tribal issues on the motives, the retaliatory motives. So we're assuming that all four of my clients, all of them, deny having retaliatory motives. We're assuming that they have the retaliatory motives in this case, that they're retaliating against Dr. Ryan because of protected speech. But that only begins the analysis. It doesn't end it. Because what these four allegedly biased people are presented with is a request for corrective action by another allegedly biased individual who's not a party to this case. That's Dr. White. And you have bylaws which make it very clear that it is entirely appropriate to conduct either a full-fledged investigation or this fact-finding mission of the FPPE that's a bit preliminary to an investigation, or something somewhat different. And it's a peer-review process. You have five fellow doctors who are now interviewing witnesses. And I think there were 13 witness interviews. Dr. Ryan refused to be interviewed. But Dr. DeFragilio was among those who was interviewed because he was also a witness. And then you had 12 others who were interviewed. But this is a completely independent committee. So they talk with all of these individuals. There's no evidence of any interference in their fact-finding. And then they issue a written report, which is before this court, which was nowhere near this court four years ago. And that's maybe the most important difference in this case because it references the justification for having the FPPE to begin with. And even more importantly, it presents the justification for everything that fell at specific factual findings about Dr. Ryan. Yes. I'm a little concerned by your statement that you're conceding retaliatory motive because I'm thinking that one of the best arguments that you have for qualified immunity is, would every reasonable official have known in this balancing that occurs that your interests were outweighed by Dr. Ryan's? It seems to me you've got a good argument that the defendant's had it for reasons. So that's, well, we're certainly not conceding that away. And I guess I have to, there are two words that are being thrown around a lot. And I understand, look, this isn't easy, I think, for anybody looking at this. But there's retaliation, there's motive, and there's justification. So let's say you have, because again, we're not conceding that there's retaliatory motive. You just were required to concede the tribal issue for the jurisdictional purpose of this interlocutory appeal. This is a very narrow focus that this court has. Because the court can't go back and undo Judge Snyder's analysis of tribal issues. The case law precludes that. You wish it weren't that way, but it does. But I think it's helpful to look back at the Ng case, Ng versus Cooley. By the way, I took over that case in part after it was up at this court. So I'm very familiar with it. And it has a five-part standard on the First Amendment retaliation case. The first three parts, the plaintiff has to prove by a preponderance of the evidence. And so you have to prove adverse employment action. You have to prove the- Yes, exactly. Thank you very much. Public issue, private, you're not acting as part of your appointment. And there has to be the nexus. And part of the nexus has to include that there's actually a retaliatory motive. So Judge Snyder found tribal issues on all three. And what we're challenging on those is the adverse action, which I can get to, I intend to get to later. By the way, I didn't say it at the outset. My intent was to preserve five minutes for rebuttal. I think I told the court before when we were presenting the papers. Anyway, so the judge found against us on all that. Then the burden shifts to the defendant to either show that the same decision would have been made, which is a totally factual analysis under Ng, and the judge found against us on that. Or the balancing test that Your Honor just alluded to, that the justification outweighs the benefit of the speech. And you only get to that question after it's already been determined that there is a retaliatory motive, or at least a partially retaliatory motive. Enough of one for the, whatever the language is, contributing factor or motivating factor behind the decision. You know, many decisions aren't based on one factor alone. And the plaintiff doesn't have to prove that there was only one factor. The plaintiff only has to show to get past some definite tribal issue that unlawful retaliation was a motivating factor for the decision. And the judge decided that was a fact about analysis and we're not allowed to challenge that here. And we've been very careful not to. But motive is not the same as justification. And this case, I think, is a very good illustration of why they're not necessarily synonymous. They may be the same in some cases. But here you have four individuals who are alleged to have been biased. But you then have, they are confronted with a circumstance not of their own making. Dr. Wright is the one who presented them with the request for proactive action. The bylaws basically say you have to look into this. There is a heavy public policy motive behind the peer review process. Because it is basically for the protection of the patients, number one, and also the physicians and for fair procedures, all of that. And so it's mandated by state law. So as far as justification goes, that's, I think, about as heavy as I've seen in any of the qualified community cases that I've read. So you have that on that side. And so all they're doing initially, even though there's a challenge to Dr. Wright's impartiality, they're handing it off to an ad hoc committee who's not alleged to have been biased against Dr. Wright for First Amendment retaliatory reasons. And so you have basically a pretty neutral fact finder that comes through and says, yeah, you've got a lot of problems with this physician and with his behavior, the way that he treats basically all of his colleagues, as well as some very serious issues with the privacy. Even though that had been looked at by the department itself, that's not the same as peer review. Just because the privacy investigator in the Department of Health Services looked at it is not the same as the Professional Staff Association peer review. And we wouldn't want to mix those up. So those are very separate. So now you have the FPPE findings of fact. And, you know, they don't tell the MEC what to do, but they say you've got to do something. So then they go to the next step. They decide to invite in Dr. Wright. And his attorney, not his attorney in the courtroom, he's another attorney, represented him in that forum. And he basically said his piece. And then Dr. D'Fragilio left. So now Dr. D'Fragilio, the only facts that we have on him is basically everything he did to set up the FPPE. And that doesn't even rise to the level of an adverse employment action as a matter of law, and certainly not as a matter of legally established law, which is the burden that the plaintiff has to overcome in this case. And then you have Dr. Vince and Dr. Lewis, who were not involved in setting up the FPPE, but now they're at this meeting presided over by Dr. Putnam, and they have all the options on the table. And they don't even go to the most extreme and just recommend termination. They propose a behavioral agreement. The plaintiff has various reasons he's offered for stating that he doesn't want to agree to that. And so because he won't agree to it, then they make the recommendation of revocation of his privileges, which is tantamount to termination of employment because he can't be employed as a doctor without privileges to practice in the hospital. So that was what they did. So we don't think there's clearly established law that there are mere votes on these committees and Dr. Putnam presiding over the committee, not, you know, telling them what to do. He's just presiding. It's like Judge Owens here is presiding over this argument. That doesn't mean he's going to order one or two judges on how to decide the case. I'm pretty sure that's how sometimes I wish. So Dr. Putnam was really in a similar situation to that. So there's no supervisorial liability, anything like that. We don't think the clearly established law shows that they took adverse actions. We don't think the clearly established law shows that the justifications separate from motive. I mean, you can have someone like I may really not like Dr. White, but you know what? I have to look at the facts, and I can come up with the facts. You know, this isn't a case where you've got the same people as judge, jury, and executioner. I'm not sure there are any of those, but they're certainly not the fact finders. Sometimes they're presented with it, and they may be their judges in terms of deciding, do we have to make a certain recommendation? They didn't take the harshest route possible first. They proposed a behavioral agreement. Dr. Ryan identified perceived flaws with that. And then they went to the recommendation, which, by the way, again, starts the process because he had a right to an entire Judicial Review Committee procedure, which was underway. And then that ended for reasons that aren't really relevant to this appeal. It's as if that just kind of disappeared and it was rendered moot is really the only bottom line. So the question is, up to this point, were they handed it off to the Judicial Review Committee? Did any of my four clients here before this court commit an adverse employment action? And were the justifications that they had that they did not control, were they substantially outweighed by Dr. Ryan's speech interests? Which I don't want to diminish them, and we certainly challenged them. But I think when, again, you look at cases like Fletcher, for example, and Rivero, what you really do have to look at, were Dr. Ryan's concerns substantiated? And were they? Did anything come of it? Well, nothing has come of it. There is no evidence in this record that certainly the DA, there's no evidence that the DA took action. Actually, I think the DA referred it to the Attorney General, probably some conflict issue with the county being involved. There's no evidence that any charges were filed, criminal or civil, concerning the alleged kickbacks, which is the only criminal thing that was alleged. I'm not sure which statute, but I'm sure there's something. And then you have the National Institutes of Health getting in because of, I think Dr. Ryan thought that these people purposefully falsified their qualifications for conducting this best CLI study. But basically, they just kind of let that go and said, look, yeah, there's some people that didn't have the qualifications. We're not finding any misconduct here, and we're not going to take any further action. So, you know, whereas we have a neutral fact finder making findings, this is not just some perceived disruption in the workplace. They found actual disruption, and it isn't just any workplace. It's a hospital. Lives are literally at stake. I mean, you can easily imagine if a doctor or a nurse or someone is being harassed by someone else, they may lose their cool and make a life-altering mistake. I mean, the stakes could not be higher. So we do feel for these reasons and for the reasons stated in the briefing that we think that the district court respectfully should be reversed on the qualified immunity issue. I see that I've gone over my time, but I reserve the rest for rebuttal. I know the state court has questions right now. No, I think we're good right now unless they disagree. Okay, we're good for right now. Thank you. We'll round up and give you three minutes. Thank you so much, Your Honor. Good morning, Your Honor. May it please the court. I'm Kenneth White. I represent Dr. Timothy Ryan, a plaintiff and a pallee. My father taught me never to quote Latin in court unless I was directly quoting Cicero, but nonetheless, it's a word I love. It's apophasis. It's the rhetorical term for saying that you're not going to say something and then saying it. The appellate's argument is largely apophasis because they're saying we're not going to challenge the district court's determination of genuine issues and material fact and then does really very little else. The doctrine applying here that limits the scope of this court's review is relatively new. It was only in 2021 in the case of, I've forgotten the name, a state. At any rate, the court only in 2021 clarified that all it can do is apply just the law and based on undisputed law was there something that was clearly established here. The court can't revisit the trial court's determination of whether there was a genuine dispute of material fact, whether the evidence was enough, if believed, to carry the day. It's important to me that the court clarify that a little more recently, very recently. At the end of 2022, this court decided Peck versus Montoya. If the court's interested, that's at 51F4877. And what the court did there was call out something that became a common argument to try to get around that new rule. And what the court said was, no, you can't try to say that what you're really talking about is materiality and still attack the trial court's decision about what is or isn't a genuine dispute of fact. That's evading our rule. But that's exactly what's happening here. Here the trial court in two very lengthy and very detailed decisions talked about how there was a genuine dispute of material fact as to whether or not the reasons for disciplining Dr. Ryan were pretextual. It was based on an extensive review of the record. It quoted evidence. And that is not subject to review at this time. It's subject to review after the end of the complete case. That solves the question. Because the trial court found there's a genuine dispute of material fact, but whether all these justifications Count was talking about were the real justifications at all. Or whether or not they were made up. I was looking for the case that best captures this in the summary judgment context or in the qualified immunity context. And I should have gone to the district court in the first place because the district court quoted the right case in talking about how this genuine dispute of material fact precludes summary judgment, including on the ground of qualified immunity. The trial court quoted Rivera v. City and County of San Francisco. And there the question was whether a trial judgment could be upheld or whether or not the state actors had qualified immunity. And what this court said was, well, there was evidence from which a jury could have determined that the reasons were pretextual. That they were seeing their justifications, their inevitability analysis, all the reasons that they said these were the real reasons. And these reasons outweigh anything about the First Amendment. What this court said in Rivera was, okay, well, that ends it. Because once we accept that disputed fact as a factual baseline, then it's very clear in Ninth Circuit law that whistleblowing outweighs. That's the end of the analysis. The same applies here. Once the trial court made that determination that there is a genuine dispute of material fact about whether or not these reasons were pretextual, then that ended the inquiry for qualified immunity as to those two elements of the five-factor test. Because if the facts are reviewed in Dr. Ryan's best view, in the way best for his inferences and his facts, then that shows that the reasons were not the reasons. And when you use that as the factual baseline, then the right to whistleblow outweighs the right to try to terminate someone, to try to discipline someone for a purely pretextual reason. That should end the analysis. The other thing I want to emphasize and point out here is how qualified immunity works in the First Amendment context. It's been my secret hope for years that this court or the Supreme Court will simply come out and say, you know, we do what's clearly established is a little different for the First Amendment than we do for the Fourth Amendment. Because to me that's very clear from the case law. I don't think the court has ever clearly articulated that, but I think it would be hard to read that authority and decide anything else. And I think one of the best illustrations of that is the very case that Counsel participated in and brought up to you in Engle v. Cooley. There one of the issues was, well, wait a minute, we've never had a case saying that your lawyer talking to the press for you is protected by the First Amendment, so it can't be clearly established. And this court said, no, that's not the way you do this. You look at whether the general principle is established, not the application to specific facts of any given set of circumstances. And under that, the general principle, that whistleblowing, talking about government misconduct, talking about government problems, is clearly established as something that's protected by the First Amendment. And the particular factual wrinkle that here you sent your lawyer out to do it is not something that stops that from happening. Would you counsel address the question whether your client was speaking as a private citizen or not and whether every reasonable official would have known that in light of the fact that the county was funding the defense in the suit that Dr. White filed? Yes, Your Honor, I'd be happy to. So, yes, one of my client's burdens is to show he was speaking in his capacity as a private citizen. The speech that's being talked about here, it's important to remember, is the outside whistleblowing, not the internal complaints. The speech that's being talked about is the complaint to the NIH, which did result in the continued participation in the program being ended, and the reports to the district attorney's office about alleged fraud. And I think counsel kind of downplayed that's what we're talking about, doctors implanting a particular type of device in patients in exchange for a kickback. It's serious business. This Court's precedents have said again and again that whistleblowing to outside agencies is something that is done in one's personal capacity. The only argument that's been offered here is that Dr. Ryan himself somehow said in one instance something that they characterized as admitting it was in his official capacity as a doctor there. They don't point to anything in the record. They talk a lot about their bylaws and how they helped them, but they don't point to anything in the record, bylaws, employment agreements, anything else that would support the idea that there was an obligation to do this as a doctor. In fact, the record shows that one of the things listed in the letter, the notice of charges to Dr. Ryan was saying he was threatened to report to outside agencies. How could that possibly then be something he was obligated to do? If it's undisputed, they put in the letter that that was one of the things he did wrong. So based on all of that, particularly since what the trial court said was not just, I find this is obviously in his personal capacity, it's that they're misconstruing factually what he said on this other occasion. It's not really an admission that it's in his official capacity, but even if it were, there would still be a dispute of fact because of the other evidence he's put in the record. So based on that, they can't seriously say the Ninth Circuit Law doesn't say very clearly that whistleblowing to outside entities is clearly established as something that's in one's personal capacity. At that level of generality, that might be true, but the law is also clear that we're not supposed to analyze at that level of generality. So would you apply it to the facts of this case? In other words, could it not be said that not every reasonable official would know that he was acting in a public capacity? I don't think it could, Your Honor, particularly given, again, I understand what you're saying about how it can't be at too high a level of generality. But under this court's authority, it can't be too low either. And that's what Eng very clearly says about general principles and applying them to factual wrinkles in any given case. Here, he was, the evidence showed he was being disciplined for this. So they can't simultaneously say that we thought this might have been something, we didn't have a way of knowing this was something that was only personal and not something he was supposed to do as a job, and say you were doing something wrong you weren't supposed to be doing as part of your job. They're inconsistent arguments. But the Ninth Circuit case law that we've cited in the brief, respecting the role of people in whistleblowing, is very clear that it's established as something that's in your personal capacity. And the only evidence, again, the only evidence they put in the record is this claim that he admitted something about it. They put in the bylaws, they put in the employment contracts, and none of that says anything about how you're supposed to report this to outside sources. Everything in the record is to the contrary. So I would submit that under those circumstances, it is very clearly established under Ninth Circuit law that whistleblowing is something done in private capacity. Counsel, I understand there's been, parallel is the right word, but there's also been litigation against Dr. White in the county. There was a jury verdict in your client's favor in that case. That's correct, Your Honor. But you're not, we just had a whole argument about res judicata, issue preclusion, claim preclusion. Nothing from that case is relevant to our argument today, correct? That's my position, Your Honor. I believe that the case against Dr. White was resolved in Dr. White's favor many years ago. There was a case against the county. That's the one. There was a case against the county, as opposed to these individual state actors, that was resolved partially in Dr. Ryan's favor, partially in the county's favor. That's on appeal. I do not believe there's any preclusion issues. I won't speak to what counsel will argue further along in the case, but for now, there are no preclusion issues that impact this appeal. Fair enough. Thank you. If the court has no other questions, I will submit. Judge Wallace, anything for this attorney? No, thank you. Just one quick question. Yes, sir. If we affirm, are these defendants precluded on remand from arguing qualified immunity at that trial? Well, Your Honor, qualified immunity is not a jury issue, but I believe they are not precluded from arguing it to the court on a motion for directed verdict or post-trial motion as a matter of law because they can argue that there are additional facts in the record at trial. Well, moreover, the trial judge was saying that they're fact issues. Exactly, Your Honor. So the trial judge could find the fact issues resolved in a way that suggests that they have qualified immunity. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honors. First, I agree with Mr. White on the non-preclusive effect of what has happened up to this point in the state court case. As he alluded to, there may be some point later where that comes into play, but my understanding was, and this is informal, that the state court trial attorneys were actually kind of going out of the way to make sure that the jury didn't make any findings that would have a preclusive effect on the federal litigation. And they obviously control that. We don't. I think they stopped short of a lot of reaching a lot of the issues that are reached in this case. They did want to reach the termination of his employment later, which we won on a summary adjudication motion, and which is also part of the appeal. I sort of wanted to try to address very quickly some of these points. First of all, whistleblowing is not always a private activity. It all depends on what the facts are. And here, Dr. Ryan, in order to obtain a beneficial fatality for defending Dr. White's lawsuit, which was settled, by the way, I think it was a total walk away, said that everything that he did that Dr. White complained about, including the whistleblowing and including the privacy violations that underlay part of Dr. White's request for corrective action, were part of his job duties. Because basically he saw as part of his job duties, you know, protecting patients, which he thinks that Dr. White was compromising by the kickbacks, and also with this federally funded study, which he's claiming that these people didn't have the qualifications to do. And actually, to some extent, he was correct on that. Let me go back and try to hit some of the other issues. Mr. White used the word made up as part of the pretext analysis. The judge didn't find that and couldn't find, because there's no evidence of this, that the justifications here were made up. My clients didn't make up what the FPPE said. The FPPE typed it. And so that part is not made up. You can have a case where it's made up. Again, if you have a case where the defendant is a judge jury executioner, they might have made up a bunch of performance laws as a pretext for firing somebody. And then you would probably, and if they put that on the table as the adequate justification, then you would say, well, the pretext negates that because we can't trust it because you may have made it up. Well, there's no evidence here, not even an allegation, that my clients made up either Dr. White's request for corrective action or the FPPE report itself. Those are the justifications that they have, and I've not heard one riff of clearly established law that suggests that they're outweighed. The Ninth Circuit certainly hasn't said that. Whistleblowing always outweighs the justification. And none of the cases cited involve this life or death health care context, which is very different. And then I think if I would be allowed to talk about the standard, you know, like Mr. White, I wouldn't mind a Supreme Court or Ninth Circuit case. I wouldn't mind if we were on it. Maybe not this one, but we'll see what happens. But I will say that in the Mr. White-picked, cherry-picked maybe, the easiest situation where you're not going to need the clearly established law is not going to need to be so finely refined. As in, for example, the Ame case, where the speech was made through an attorney. I think it was Mark Geragos, who's a pretty familiar attorney to most legal evils. And the court said, well, that doesn't matter. It's still his speech. And yeah, so if it's an irrelevant distinction, then no, it doesn't have to be on point on irrelevant grounds. Just like the Ellens case. Well, yeah, if the employer makes a decision that deprives you money, then that's an adverse action. It doesn't matter what form that took, whether that was to subduct and pay or whether they did something that had the indirect effect of it. It's still an adverse action. So those would be immaterial distinctions. But what I didn't hear is anything on the adequate justification. I think there, this is much closer to the Fourth Amendment context, where it has to be fact-intensive, and especially on Pickering balancing, because this court has repeatedly said it is only a rare circumstance where the balancing outweighs, the balancing is so clear that qualified immunity is inappropriate. And here, again, the justifications are basically what the FPPE put out arising from Dr. White's request and versus Dr. Ryan's speech, which basically didn't result in any action being taken. And I think there, there's no clearly, maybe he could prove to a jury that his justifications outweigh, although I don't think it's a jury question, it's ultimately a legal question, and there's no dispute as to what the facts are of the justifications. Those are undisputed, and they're in the district court decision. Even when you view it in the light most favorable to Dr. Ryan, that doesn't mean you can just wish away what the FPPE wrote. They have to deal with it. That's their responsibility. The bylaws make them responsible for that. And even if they're afraid, I mean, Dr. Yee, who is a defendant in this case who is not an appellate because he obtained summary judgment, he said at one of the MEC meetings, well, you're going to have a fear of retaliation. Yeah, you bet you have a fear. I mean, we're here today because of that fear being realized. But just because you fear that your actions will wind up making you a defendant in a First Amendment retaliation lawsuit should not be a basis to shirk your duty in the peer review process to make the decision that you believe is warranted on the facts. I would hate to think that judges would be deal bound by a threat of suit in making their judgments. And so even if you have some motives that are found by a judge to involve factual issues, you still have the justifications that you can't ignore. And we ask the court to reverse the denial of summary judgment. All right, thank you, counsel. Thank you very much. Thank you both for your briefing. The argument of this case is matter of submitting. And this particular panel is adjourned. We have a new panel starting tomorrow. Thank you. All rise. This court for this session stands adjourned.
judges: WALLACE, OWENS, Fitzwater